In the Matter of STEPHEN RICHARD HILL, an Attorney, Respondent. ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, Petitioner.

First Department, April 25, 1977

■

*James D. Porter, Jr.,* of counsel *(Oscar J. Cohen* with him on the brief), for petitioner.

*Ronald P. Fischetti* of counsel *(Fischetti & Shargel,* attorneys), for respondent.

*Per Curiam.* Respondent, admitted in 1966 in the Second Department, was convicted by plea in the United States District Court for the Southern District of New York of conspiracy to violate the regulations of the SEC and underlying statutes by manipulation of the price of corporate stock. The charge would have been a misdemeanor under New York law (Penal Law, § 105.00 *et seq.).*

In 1971, respondent was retained by Leisure Time Marine Corporation for one year at a retainer of 28,000 shares of its common stock. Shortly thereafter, he was introduced to one Van Aken who, he was told, was financial advisor to the company, and a large creditor as well. Van Aken stated that he had found an opportunity for the corporation to acquire substantial capital to pay its obligation to him; he had a scheme whereby a "shell" public corporation with SEC registration, called Elinvest, could be acquired by Leisure Time by merger so as to permit its "insider" stock to be released into the public market at an increased price. Having no experience whatever in the field, respondent followed Van Aken's instructions to draw an acquisition contract and opinion letter. He drew the documents, setting up a table by which there would be exchange of shares, with controlling stockholders, inclusive of his own fee of stock, to be restricted in alienation of their shares. Freedom from restriction was to be accorded on application to respondent. In the course of operations, he freed the

stock held by him and by one Bradley, whom he subsequently discovered to be related to Van Aken.

As instructed by Van Aken, he drafted a letter to other stockholders asking them voluntarily to restrict their disposition of stock so that a public trading market might be created. Rebuffed by one of the recipients and learning that Bradley was an alter ego for Van Aken, an insider, and dealing for the latter, he came belatedly to the realization that he was involved in illegality, and cut off his relationship with Van Aken. Though he should then have approached the authorities with information about the matter, he was "too frightened" at that point, and too overwhelmed with other difficulties to do so. Eventually, he was indicted as the result of an official inquiry, in which he co-operated fully. He was sentenced after his plea to a year in prison, the last two-thirds of which were spent part-time in a half-way house, and fined $5,000. The stock taken as a fee netted him about $6,000, leaving him, after payment of the fine, a profit of about $1,000 for all his involvement.

The Referee found specifically that respondent took part in the illegal transaction even after ascertaining it was illegal, by failing to do anything affirmative to stop it, and to notify appropriate authorities.

The Referee sustained the charge against respondent; indeed, there was no real denial. However, several mitigating factors are pointed out. As has been stated, respondent was without experience in a strange field, and completely under Van Aken's influence. (Van Aken, in United States District Court, admitted that he was the master mind.) There never was a previous complaint against respondent, and there was good character evidence in his behalf. He made virtually nothing from the transaction, though he had severe family medical bills. He also is supporting his daughter. After psychiatric treatment, necessitated by heavy remorse, he has managed to stabilize his life and earns a modest living in the law. The indication is that he will never again commit any offense. While his conviction proves, prima facie, unfitness to practice, a wide range of facts bears on the ultimate issue of fitness to remain at the Bar *(Matter of Keogh,* 17 NY2d 479, 481), amongst which we do not overlook the penal sanction he has suffered. Nor are we unaware of the action taken in a case with similar circumstances *(Matter of Kanarek,* 33 AD2d 280, 283). Gauging the sanction to be imposed according to the

case's particular facts *(Matter of Feola,* 37 AD2d 789, 791), and taking into account that respondent's misconduct was induced by inexperience and economic pressures *(Matter of Rotwein,* 20 AD2d 428, 430), we consider a brief period of suspension to be condign to the offense. Accordingly, respondent should be suspended from practice for a period of three months.

MURPHY, P. J., KUPFERMAN, LUPIANO, SILVERMAN and MARKEWICH, JJ., concur.

Respondent suspended from practice as an attorney and counselor at law in the State of New York for a period of three months, effective May 25, 1977.